I want to briefly address three key reasons why the Veterans Court erred in holding that a VA medical examiner can be presumed to have certain specialized qualifications required by a remand order. First, such a presumption is fundamentally inconsistent with the veteran's right to compliance with remand orders and with the duty of the Veterans Administration and Board of Veterans Appeals to ensure compliance with remand orders. Placing such a presumption on the veteran also gives the veteran an extraordinary evidentiary burden that's inconsistent with the paternalistic and non-adversarial nature of the Veterans Claims System. There's also a crucial distinction between presuming an examiner's competence and presuming that a VA medical examiner has particular specialized expertise called for by a remand order. And even if the presumption that a medical examiner was competent is proper, that would by no means suggest that it would likewise be proper to presume that a VA medical examiner has specialized qualifications required by a remand order. JUSTICE KENNEDY Well, Mr. Myers, was there an objection made at the time that the medical exam was taken by the nurse practitioner? MR. MYERS No. This issue was first raised in the Veterans Court, which was the first time that Mr. Purcell was represented by counsel. And that's an important reason why it would be improper to place the burden of flagging potential noncompliance with a remand order that requires examination by an examiner with specialized qualifications on the veteran. The rule that the Veterans Court essentially established requires the veteran to recognize first that the veteran has a right to compliance with the remand order, requires the veteran to then recognize what the remand order was specifically entitling the veteran to. It then requires the veteran to recognize that the Veterans Administration was not, in fact, providing whatever it was that the remand order entitled the veteran to. And that's an awful lot of work to impose on a veteran who doesn't have the assistance of legal counsel. JUSTICE KENNEDY So are you arguing that they ought to have legal counsel at that point? Is that your case? MR. MYERS My case is not that they ought to have legal counsel at that point. The Veterans Claim System is set up to be paternalistic and non-adversarial. JUSTICE KENNEDY That was true at one time. It's no longer true. It's now a mixed case, half and half, right? MR. MYERS Regardless of whether it's 100 percent non-adversarial or only partially non-adversarial, the fact is that the Veterans Administration has a variety of duties to assist veterans, and Congress wanted the Veterans Administration to make this system very friendly for claimants. And... JUSTICE KENNEDY But if you take the adversary issue out of what goes on back in the ROs 20 years ago, the whole system's going to get a little bit clogged up, don't you suppose? MR. MYERS Well, first of all, this isn't a case that's extended 20 years. The examination in question actually occurred at the end of 2004. So this proceeding is relatively recent. In fact, the claim it issued here wasn't even filed until 1999. With respect to... JUSTICE KENNEDY But the event occurred, the alleged injury occurred... MR. MYERS The alleged injury occurred in 1954. That's correct. JUSTICE KENNEDY 1954. I was a little off on 20 years. MR. MYERS But... JUSTICE KENNEDY But doesn't that fly in the face of the record, which shows that there was no problem upon discharge, and that actually the first back knee problem occurs two weeks after discharge. He shows up having slipped while reaching into an icebox. MR. MYERS Well, what you're getting at, Your Honor, I think shows the importance... JUSTICE KENNEDY  MR. MYERS Right. The fundamental issues below, the substantive issues at issue with respect to this veteran's claim, were whether the veteran's current disabilities can be attributed to the football accident that occurred during service, or whether it can be attributed to diseases or accidents that occurred after service. And... JUSTICE KENNEDY But upon discharge, there's no problem. MR. MYERS Well, that was what the Veterans Administration's examiner concluded here. And we don't know whether or not that examiner was a specialist. A specialist might have had a different conclusion about whether the injury that's documented in the report of that 1956 hospitalization was in fact a new injury or was in fact just an exacerbation of a preexisting injury that But moving forward, the issue now is that we don't know whether a specialist who had qualifications that would enable that person to make a really expert judgment about whether or not that 1956 injury was a new injury or was just an exacerbation of an old injury, in fact, has been provided to Mr. Purcell in accordance with what the Board of Veterans Administration, I'm sorry, the Board of Veterans' Appeals ordered in its 2004 remand order.  JUSTICE KENNEDY Well, an appropriate specialist might have been someone who understood the VA process and who knew how to read VA records and medical records. MR. MYERS I think that in the context of this particular claim, it's fairly clear that an appropriate specialist was going to be a specialist with some sort of specialized expertise in orthopedics. Mr. Purcell's disability is a back disability. There was an x-ray reading involved in adjudicating the merits of this claim, and Mr. Purcell had himself submitted a letter from an orthopedic specialist which indicated that the specialist Mr. Purcell had seen thought that his injuries did in fact stem from the in-service accident. JUSTICE KENNEDY That was Dr. Fox. MR. MYERS I'm sorry? JUSTICE KENNEDY That was Dr. Fox. MR. MYERS That's correct. JUSTICE KENNEDY Now, Dr. Fox also omitted some material that should have been made part of the medical record. MR. MYERS Well? JUSTICE KENNEDY As far as the therapy that was being undertaken for a fall that took place in 1991. MR. MYERS Well, again... JUSTICE KENNEDY So how can you take the entire medical record, make it incomplete, and then expect the VA to consider the entire medical record at that point in time and say, well, you didn't give us everything that you were supposed to give us by a proper examination when the medical record that's submitted by the veteran's own doctor is incomplete? MR. MYERS The point here, Your Honor, is that the Veterans Administration, when it provided this VA medical examiner to look at the complete file, we don't know whether that was somebody who was an expert who could ascertain whether the fact that Dr. Fox had not mentioned the, I guess, falling accident that's referred to in the physical therapy report, whether or not that really amounts to an inconsistency or just an opinion on the part of Dr. Fox that this falling accident was merely an exacerbation of a long-existing problem that stemmed initially from Mr. Purcell's military service. JUSTICE KENNEDY Probably would be incumbent upon Dr. Fox to complete the record, making sure that the VA has a total record for the veteran to be assessed. MR. MYERS Well, Dr. Fox... JUSTICE KENNEDY ...doesn't disclose the particular documents that you're going to submit. MR. MYERS Dr. Fox was Mr. Purcell's private physician. Dr. Fox wasn't the VA's medical examiner. JUSTICE KENNEDY I understand that. MR. MYERS And so the VA has the duty to help compile all of the medical evidence necessary to properly adjudicate this claim. And so the fact that Dr. Fox didn't have in his possession at the time he privately evaluated Mr. Purcell one particular document or that the VA then happened to rely on, that just shows why it was important for the VA to have provided a specialist so that the as Dr. Fox. JUSTICE KENNEDY How do we know that the examiner, the VA examiner, was not qualified? Were the qualifications challenged at that point, were the qualifications challenged at any time? MR. MYERS Well, again, the issue here is that we don't have any evidence one way or another as to whether or not the VA medical examiner had specialized expertise in the field relevant to this claim, in this case, orthopedics. So while there's a possibility that this individual had some sort of specialized training, the record doesn't reflect that. And there's also a possibility that this individual does not have any kind of specialized expertise. And the issue here is that if this individual doesn't have specialized expertise, the individual wasn't compliant with the remand order. And in that case, Mr. Purcell would need to be examined by a specialist in order for the VA to have fulfilled its duty to comply with the remand order. Now, the Veterans Court indicated that it could overlook the fact that the record didn't in fact show the VA's compliance with the remand order because it could simply presume that this individual had the specialized qualifications that were required by that. Well, it didn't overlook the requirement that it comply. It said that it did comply because it presumed that the examiner was the appropriate person to do this. Exactly. It placed the burden on Mr. Purcell of coming forward with evidence indicating that the examiner was not, in fact, compliant. And again, that's a burden that is inconsistent with his right to have the VA ensure that remand orders are complied with. Mr. Myers, you're into your rebuttal time now. I'm sorry. No, okay. Fine. You can continue or stop. Why don't we stop? We'll continue later. Thank you. Mr. Hockey? May I please report? As an initial matter, I'm not really sure why we're talking about compliance with the remand order. Although that issue was raised before the Veterans Court, it was clearly not raised in the principal briefs before this court. Instead, there was an argument made about there should be some requirement on the part of the VA in its R.O. and board decisions to address competency even in the absence of a challenge to competency of medical examiners. So I think that, although interesting, the discussion we just had about compliance with the remand order is not something this court should consider. Moreover, as this court's well aware in the Diamond decision, challenges to a Veterans Court's finding about compliance, and in this case, a Veterans Court specifically held in this decision that it found compliance, substantial compliance with the remand order, are outside the jurisdiction of this court to consider. All right. So let's address the question that is within this court's jurisdiction to consider, I assume, or hypothetically at least, and that is, at what point should we expect the veteran to be able to challenge the qualifications of the appropriate examiner that, at a point, well, at what point does that arise? At the point he receives an examination. He's in the best position. He knows before everybody else who's examined him. So if the veteran has some concern about the quality of the exam itself or the competency of the examiner, he's free to raise that. And as the court knows, the opportunities to raise issues throughout the claim development process are innumerable. And when someone receives an examination as part of their claim development process, usually while the claim is pending before the RO, but also upon a board remand, and he's dissatisfied by a final decision by the RO denying his claim, which the RO is the first part of the VA that issues those types of decisions, he files his notice of disagreement. And in that notice of disagreement, he's required to identify the errors in the decision below. And he's free at that point to identify the fact that he felt there was some incompetence or something wrong with the type of medication. So if he had in his NOD highlighted his unease with the quality qualifications of the examiner, that would go to the board. At which point is it your position that the board would have an obligation to look into it, or could the board simply say, we presume that this person was qualified, and there's a presumption of correctness? Well, even before it goes to the board, the regional office, as part of its regulatory requirements, is to review the contents of the NOD. So setting that sort of technical response aside, both the RO and the board would look at the question. And if they felt that it was meritorious, then they would address it. And this is what we say in our brief, that the real challenge here is the 7104 Reasons and Basis Challenge, which goes to the sufficiency of the RO and board decisions. In other words, what Mr. Procell is really saying is, well, I wasn't happy with the board decision in this case, because nowhere in that decision did I see a discussion of the nurse practitioner's qualifications in this case. Well, the reason we didn't, because it was never raised before the RO or the board. And so neither the RO or the board in this case felt that that was even an issue that they needed to consider. And 7104 Reasons and Basis is a basis upon review in which, say, the Veterans Court, finding a lack of discussion of a particular issue, could remand for further evidence or further discussion on the part of the board. So I emphasize that. Mr. Hockey, are you saying that the veteran needs to cross-examine the person who is conducting the physical examination, asking for their credentials at that point? And are you a Harvard Medical School graduate, Johns Hopkins, or otherwise? Most people usually come in with their white coats on and stethoscopes, and they are presumed to be doctors or good medical individuals. And how is a veteran supposed to know whether he's being examined by a nurse, a nurse practitioner, or a doctor, or otherwise, without a cross-examination? Well, asking the person's identity is not necessarily considered a cross-examination. But if there's a concern that the veteran has with the quality of the examination, he raises that. This all goes to the point where if there's an obvious, obvious failure in the record, in other words, there's a medical examination that's authored by the janitor, well, that's clear from the record. And it would provide a reviewing court, whether it be the board or the Veterans Court, with an opportunity to suggest that perhaps somebody didn't do the reasons and basis homework correctly and send it back and say, why is it that we have, why are you relying upon a medical report that's prepared by a janitor? That's not the case here. But I mean, that's what 7104 would provide. It provides relief to a veteran who has a concern about the medical competency. But that's afterwards, right? That's after the fact, not during the examination. Well, during the exam, I'm not quite sure what's being suggested. I mean, what authority this court would have to discuss the type of doc. I guess the court could not order the VA to have an internal medicine or an internal doctor or a cardiologist on a particular matter. That should be up to the discretion of the VA. But at least a qualified individual that satisfies the needs of the particular medical requirements of the veteran. Well, there's no suggestion in this case that that wasn't provided, Your Honor. That's the whole point. But that's an afterthought, afterwards. Not during the examination. The veteran does not know during the examination whether or not that particular individual is a doctor, a lawyer, an Indian chief, right? All they have is a white coat on and a stethoscope. And if there's any suggestion in the record that the individual is not qualified or competent, then the Veterans Court would have a record to review. And all the Veterans Court can do is review that record. But that's subsequent. That's subsequent. But there are no rules that we're aware of that would require the VA to somehow set out in its decision beforehand what the qualifications of these individuals are. And to the extent there are any rules, I respectfully request that those are for Congress and the VA to deal with. In this case, all you have is a situation in which the individual doesn't challenge it below. And I also, as a sidebar note, he was represented by the Disabled American Veterans below, and I would suggest that they are very competent and trained professionals whose job it is to represent these claimants. It's only when he takes on new counsel before the Veterans Court that this issue is raised. I'm not going to say... So there can be no real question that he wasn't served competently by his own representatives. And when the issue comes up before the Veterans Court, the Veterans Court does what it does with every issue. It reviews the record to determine whether there's anything on the face of the record that would support a challenge to the competency of the individual. And they held in this case, no, there wasn't. And that can't be reviewed by this court. So in order to get by this finding, Mr. Procell comes before this court and says we would like there to be some sort of rule that the VA in all of its regional office and board decisions begins its discussions with a discussion of the competency of a medical professional. There simply is no rule like that. Well, if this court presumed to require an orthopedic surgeon for everybody who limped into the office, we'd shut down the whole administration, wouldn't we? There's only so many surgeons and we simply have to recognize the administrative impracticality of such a request. But I would add, again, to your earlier point, Judge Garrison, it's not for this court to order that type of relief. But the Veterans Court could find that a particular remand order wasn't complied with because the specialist that was required wasn't provided to the individual. That already exists. The problem in this case is that the Veterans Court made a specific finding that the remand order was complied with. So the possible horribles that could result are already being dealt with with other rules and compliance with remand orders, which either aren't being challenged, haven't properly been raised in this particular case, or are dealt with by 7104's reasons and basis requirement, which was available in this case to make that kind of an argument. It just so happens that the facts of this case didn't support a remand based upon a vote to provide the reasons and basis. Thank you, Mr. Hawkey. Mr. Myers, you have a little over three minutes remaining. Thank you. I want to make three basic points in response to the dialogue that your Honor's just had with Mr. Hawkey. Mr. Hawkey keeps emphasizing the fact that there's no rule in a statute. The rule here that required, the rule here was that the remand order had to be required, had to be complied with. The Board of Veterans' Appeals issued a remand order and the VA and the Board of Veterans' Appeals had a duty to ensure that it was complied with. And he keeps emphasizing the fact that there's no evidence in the record that it wasn't complied with, but there's likewise no evidence in the record that it was complied with and that the individual had the requisite specialized qualifications. Now, with respect to who should come forward with that evidence, that's evidence that the Veterans Administration has in its possession. The VA knows whether the individual that examined Mr. Purcell had any sort of specialization in orthopedics and it could easily stick that information in the claims file or ask the individual to simply write something out that states that for the claims file. But yet, that wasn't done. And ordinarily, when a party has evidence in its possession, in Veterans' Claims proceedings and in lots of other proceedings, it's the burden of the party that actually has the evidence to come forward with it. It's not the burden of the other party to get that evidence from the opponent and then place it into the record. And that's particularly important in a situation like the Veterans' Claims process where veterans don't have access to the usual tools of discovery. So they have to rely on the Veterans Administration to get that evidence into the record. I also want to again clarify the distinction between competence, that is, whether a medical examiner has the requisite qualifications to be able to offer medically valid evidence, and whether an examiner has specialized qualifications required by a remand order. Again, the decision below and the government's briefing seems to confuse this distinction. And they rely on these cases from the Veterans Court which suggests that perhaps competence could be presumed. But whether somebody has particular qualifications required by a remand is a fundamentally different question. And what the decision below suggests is that compliance with the remand can be presumed. And that's an inappropriate presumption because it shifts to the veteran the burden of coming forward with evidence indicating that the remand was not, in fact, compliant with. I also want to again emphasize that the issue here isn't whether the Board of Veterans' Appeals had to discuss in its opinion the qualifications of this particular medical examiner. The issue is whether there just needed to be some sort of indication in the claims file that this individual, in fact, had the qualifications that the prior remand order had required. And it was Mr. Purcell Smith's, the Veterans Administration's, duty to come forward with that evidence indicating that the individual had the requisite qualifications. I see my time is up. Thank you very much, Mr. Myers.